FILED

08/04/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0095

DA 24-0095

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 179N

STATE OF MONTANA,

     Plaintiff and Appellee,

   v.

LISA MARIE LEWIS,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 22-195
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Ryan P. Archibald, Attorney at Law, Corpus Christi, Texas

     For Appellee:

     Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

     Bill Fulbright, Ravalli County Attorney, Sean Peterson, Deputy
County Attorney, Hamilton, Montana

Submitted on Briefs:  June 24, 2026

Decided:  August 4, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Appellant, Lisa Marie Lewis (Lewis) appeals from her felony conviction in the Twenty-First Judicial District Court, Ravalli County, of Driving Under the Influence (DUI) of Alcohol or Drugs.  Lewis asserts the District Court committed reversible error by permitting the State, over objection, to replay the entirety of the Montana Highway Patrol Trooper's dash-cam video to the jury during its deliberations.  We reverse and remand for a new trial.

¶3      On July 21, 2022, Montana Highway Patrol Trooper Jester observed Lewis make a wide left turn onto northbound U.S. Highway 93, enter the wrong lane, and strike the curb. The stop and the ensuing DUI investigation were recorded by Trooper Jester's dash-cam and body microphone; the recording captured both the officer's statements and much of Lewis's verbal and nonverbal responses.  The dash-cam recording was pre-admitted as State's Exhibit 2.

¶4      At trial, Trooper Jester testified about his observations, the administration of the standardized field sobriety tests (SFSTs), Lewis's difficulty following instructions, and his opinion that Lewis exhibited signs of impairment.  The State played portions of the dash-cam video during Trooper Jester's testimony and later played the remainder of the

2

video. Forensic toxicology evidence showed Lewis had multiple prescription drugs in her blood, including amphetamine and lamotrigine. Lewis presented medical testimony and her own testimony that her medical conditions (knee replacements, dentures, chronic pain, long-term prescriptions) explained her speech, balance, and inability to perform the SFSTs.

¶5 After closing statements, counsel conferred with the court regarding exhibits. The State recommended State's Exhibit 2 (the patrol car dash-cam video) not be sent to the jury room, and defense counsel agreed.

¶6 During deliberations the jury sent the court several notes. Two such notes show the jury was wrestling with the central factual dispute, asking: (1) "Is there a separate sobriety test for disabled persons?" and (2) whether the State must prove beyond a reasonable doubt that impairment was caused by drugs rather than some other cause. The jury also asked to "rewatch" the dash-cam video. Defense counsel objected on the basis that the video contained testimonial evidence and therefore should not be rewatched unless the court specifically isolated the portion addressing the jurors' concerns. The District Court, over defense counsel's objection, allowed the jury to rewatch the entire video in another courtroom with the clerk pressing play and leaving the room. The jury watched the video in its entirety and shortly thereafter returned a guilty verdict.

¶7 We review a district court's decision about what evidence may be taken into the jury room during deliberations for an abuse of discretion. *State v. Green*, 2022 MT 218, ¶ 11, 410 Mont. 415, 519 P.3d 819; *State v. Stout*, 2010 MT 137, ¶ 29, 356 Mont. 468, 237 P.3d 37. A district court abuses its discretion when it acts arbitrarily, unreasonably, or without conscientious judgment, resulting in substantial injustice. *Green*, ¶ 11; *State v. Nordholm*,

3

2019 MT 165, ¶ 8, 396 Mont. 384, 445 P.3d 799. When testimonial materials are made available to a deliberating jury in violation of our rules and precedent, the error is trial error and the error is not harmless unless the State demonstrates there is no reasonable possibility that the error contributed to the conviction. *State v. Van Kirk*, 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735; *Nordholm*, ¶ 12.

¶8 The sole issue in this appeal is whether the District Court committed reversible error by allowing the jury to rewatch Trooper Jester's dash-cam video in its entirety, unsupervised, during deliberations.

¶9 Lewis argues it was an abuse of discretion for the District Court to allow the jury to review the dash-cam video during its deliberations. She argues this video is testimonial in nature because it captures Trooper Jester's investigation and includes Lewis's verbal responses to his questions. Lewis argues the court failed to follow the rule outlined in statute and our prior precedent providing that juries cannot review testimonial evidence during deliberations unless carefully limited by the district court to answer a specific point of inquiry. Lewis argues the court should have inquired as to what specific evidence the jury wished to see, consulted with counsel, and then either denied the request or allowed the jury to see only that portion of the evidence under supervision.

¶10 The State concedes the District Court failed to follow the required procedure under § 46-16-503(2), MCA, and our cases interpreting it. The State also concedes that the common law rule prohibits sending testimonial evidence to the jury for unsupervised viewing during deliberations. *See State v. Hart*, 2009 MT 268, ¶ 34, 352 Mont. 92, 214 P.3d 1273. This is intended to prevent the jury from placing undue emphasis or weight

4

on a particular portion of testimonial evidence to the exclusion of other evidence, rather than relying on its collective memory and consideration of all the evidence presented at trial. *State v. Bales*, 1999 MT 334, ¶¶ 19-20, 297 Mont. 402, 994 P.2d 17.

¶11 We have long recognized a common law rule against submitting testimonial materials to a jury for unsupervised and unrestricted review during deliberations because such access risks undue emphasis on that material to the exclusion of other evidence. *State v. Harris*, 247 Mont. 405, 417, 808 P.2d 453, 460 (1991) (discussing the common law rule and § 46-16-503(2), MCA). Section 46-16-503(2), MCA, permits the jury to request information during deliberations, but our cases require the district court to inquire into the specific nature of the jury's request, consult the parties, and limit any replay of testimonial material to the portion necessary to answer the jury's question. *See State v. Hoover*, 2021 MT 276, ¶ 19, 406 Mont. 132, 479 P.3d 598; *Green*, ¶¶ 15-20; *Hart*, ¶¶ 33-36. For decades, we have consistently and repeatedly emphasized the danger in allowing juries to hear evidence critical to the State's case during their deliberations. *State v. Mayes*, 251 Mont. 358, 374, 825 P.2d 1196, 1206 (1992); *State v. Evans*, 261 Mont. 508, 513, 862 P.2d 417, 420 (1993); *Bales*, ¶ 20; *Nordholm*, ¶ 14.

¶12 The State recognizes that our precedent and the procedural statute governing this matter, § 46-16-503(2), MCA, do not supplant the common law rule. If the jury requests additional testimonial information in its deliberations pursuant to § 46-16-503(2), MCA, the court must inquire as to the particular evidence requested, the purpose of the request or nature of the dispute prompting the request, and determine which part of the testimony or evidence would be responsive to the jury's request. The court must then weigh the

5

probative value of the requested evidence against the danger of undue emphasis of that evidence, and determine whether to provide the requested evidence to the jury. *Hoover*, ¶ 19; *State v. Greene*, 2015 MT 1, ¶¶ 23-24, 378 Mont. 1, 340 P.3d 551.

¶13 Although the State concedes the court erred in permitting testimonial evidence to be replayed to the jury during deliberations without the requisite inquiry and marshaling, it asserts the error was harmless.

¶14 *Van Kirk* sets the standard for harmless error review in this context: the State must demonstrate no reasonable possibility that the inadmissible testimonial material contributed to the conviction. *Van Kirk*, ¶ 47. The inquiry is not merely whether the video was cumulative in a narrow evidentiary sense; rather, the State must show qualitatively that the replay could not have influenced the jury's decision. *Van Kirk*, ¶¶ 47-51.

¶15 Our case law further reinforces the *Van Kirk* standard that the harmless error inquiry in this context is not about whether other evidence "also proved" the same facts. In *Nordholm*, the State argued that the evidence in the videos did not unduly contribute to Nordholm's aggravated kidnapping conviction because other evidence introduced at trial proved the same facts as in the video. *Nordholm*, ¶ 13. This Court was not persuaded by this argument because the purpose of the common law prohibition on submission of testimonial material to a jury during its deliberations is to prevent the jury from giving undue weight to such testimonial evidence. *Nordholm*, ¶ 13. The testimony given at trial, including statements made during cross-examination, was limited to what the jury remembered. *Nordholm*, ¶ 13. "It may well be true that other evidence presented at trial

proved at least some of the same facts as those in the videos, but the qualitative effect of the jury's review of the videos is both unknown and unknowable[.]" *Nordholm*, ¶ 13.

¶16     *Hart* and *Bales* further illustrate the rule. In *Hart* we held that where the video evidence was cumulative of other admitted evidence and did not add unique testimonial content, the error in allowing a single supervised replay was harmless. *Hart*, ¶ 36. In *Bales* we held that a district court abused its discretion by allowing a jury to hear a taped interview during deliberations but found the error harmless where the tape was cumulative of other testimony and not critical to the State's case. *Bales*, ¶¶ 24-30. *Hart* and *Bales* do not authorize the unsupervised replay of testimonial material in every case; they require a careful, context-sensitive inquiry and, when replay is allowed, appropriate procedural safeguards. Further, *Hart* and *Bales* permitted harmlessness findings only where the testimonial material was cumulative and not critical to the State's case, and where the district court either limited the material or the record showed the material could not have affected the verdict. *Hart*, ¶ 36; *Bales*, ¶ 30.

¶17     *Nordholm* condemns unsupervised, unrestricted access to testimonial videos because repeated view of evidence gives undue emphasis to testimonial statements contained therein. *Nordholm*, ¶¶ 12-14. Here, the dash-cam video contained testimonial content—Trooper Jester's questions, instructions, and commentary and Lewis's verbal responses and nonverbal communicative conduct—and thus had testimonial character. *Bales* recognized that audio/video recordings of investigative interviews have testimonial character when they contain statements that were also elicited at trial. *Bales*, ¶¶ 16-17. The District Court's decision to replay the entire recording without isolating testimonial

7

from non-testimonial content or limiting playback to the portion necessary to answer the jury's question created the very risk of undue emphasis our cases prohibit.

¶18 Focusing on whether the video was cumulative misses the point. The common law rule exists precisely because testimonial video evidence, when replayed during deliberations, risks being given undue emphasis compared to live testimony, which jurors must recall from memory. The rule "prevents the jury from giving undue weight to one witness's statements to the exclusion of the evidence presented by other witnesses." *Hart*, ¶ 34 (citing *Bales*, ¶¶ 19-20).

¶19 There is no dispute the dash-cam video contains testimonial evidence. Yet the District Court did not attempt to isolate any non-testimonial portions. It simply replayed the entire video. However, in *Nordholm*, we emphasized that even when a video contains both testimonial and non-testimonial material, the court must carefully limit what the jury may review:

> At trial, a jury hears testimony from witnesses on the stand. During deliberations, a jury must rely on its collective memory to assess the testimony of those witnesses—a transcript of witness testimony is not provided. It would create a fundamental imbalance to allow juries to review testimonial video evidence during deliberations when a transcript of the testimony given by witnesses at trial is not, and should not, be given to the jury to review during deliberations. On rare occasions, it may be appropriate for a jury to review testimonial video evidence during their deliberations based on an unusual or unique circumstance. Such review, however, must be supervised by the district court, to prevent the very problem at issue here.

*Nordholm*, ¶ 14. Here, despite no unusual or unique circumstance, the court did the opposite. It provided the jury with a full replay of all testimonial statements—Trooper Jester's questions, commentary, and narrative—without judicial supervision.

8

¶20    The jury's questions reveal it was struggling with the central issue of whether Lewis's behavior was caused by impairment or by disability and medical conditions. The jury asked:

> 1. "Is there a separate sobriety test for disabled persons?"
>
> 2. "Does the impairment need to be proved beyond a reasonable doubt to be caused by drugs and not some other cause?"

These questions show the jury was wrestling with the precise factual dispute the video could influence. This was not a case where guilt was obvious or uncontested. It was a close call.

¶21    When a jury is divided or uncertain, the risk of undue emphasis from replaying testimonial video evidence is at its highest and, as noted in *Nordholm*, the qualitative effect of replaying such evidence is "unknown and unknowable." *Nordholm*, ¶ 13. But here, the timing is telling—the jury watched the video and shortly thereafter returned a guilty verdict. That sequence alone creates a reasonable possibility the replay influenced the verdict. Under *Van Kirk*, that ends the inquiry.

¶22    Once Lewis established a reasonable possibility of prejudice—which she did by objecting and by demonstrating the jury's struggle—the burden shifted to the State to prove harmlessness. *Hart*, ¶ 35. As *Van Kirk* requires, "the State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction." *Van Kirk*, ¶ 47. But the State's argument is the same one we rejected in *Nordholm* that the video evidence was cumulative—and "[w]e are not persuaded by this argument, because the purpose of the common law prohibition . . . is to prevent the jury

9

from 'giving undue weight' to such testimonial evidence." *Nordholm*, ¶ 13 (quoting *Hart*, ¶ 34). The State does not—and cannot—explain why the video played immediately before the verdict did not give it undue weight. Nor does it explain why the jury needed to see the entire video, including testimonial portions irrelevant to its questions. Nor does it explain why the District Court failed to follow the required statutory procedure. Because the State has failed to show no reasonable possibility of prejudice, reversal is required.

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶24 Reversed and remanded for new trial.

/S/ INGRID GUSTAFSON

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

Chief Justice Cory J. Swanson, dissenting.

¶25 I agree with the Court that it was error for the District Court to play the entire patrol car video to the jury during its deliberations. However, I would hold it was harmless error and would affirm the conviction.

¶26    The State "reluctantly" concedes the error, but asserts the error was harmless and we should affirm the conviction.  Following *Hart* and *Van Kirk*, the State argues the video evidence was cumulative of the other incriminating evidence offered at trial, and there is no reasonable possibility the video's testimonial evidence led to Lewis's conviction.

¶27    An error of evidence is "typically a 'trial error,'" not a structural error.  *Hart*, ¶ 35.  Once the defendant has asserted at least a reasonable possibility of prejudice, which Lewis has done, then the burden rests on the State to prove the error was harmless.  *Hart*, ¶ 35.  To carry that burden, the State must "demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence and, qualitatively, by comparison, the tainted evidence would not have contributed to the conviction."  *Van Kirk*, ¶ 47.

¶28    In *Hart*, a bailiff violated the above-described procedure for showing testimonial evidence to a jury when he provided DVD videos of a traffic death investigation to the jury, without first informing the judge.  *Hart*, ¶ 7.  The most significant of the videos from a patrol car showed only the outside of the suspect's house, but it contained the audio recording of the investigating officers inside the house interviewing the suspect.  *Hart*, ¶ 33.  That audio included Hart's oral admissions that he had hit something while driving, and his admission matched the time and location of the fatal strike on the victim.  *Hart*, ¶ 33.  Hart further admitted he had been drinking prior to driving.  *Hart*, ¶ 33.

¶29    We held the jury's viewing or listening to this video during deliberations could not have contributed to Hart's conviction.  *Hart*, ¶¶ 36–37.  All of the evidence contained on the video was duplicative of other evidence at trial.  *Hart*, ¶ 36.  We explained, "[T]he State

11

introduced blood tests matching the victim's blood to samples taken from Hart's vehicle, and witnesses testified about Hart's alcohol consumption and to his having admitted to hitting something or someone the night of the incident." *Hart*, ¶ 36.

¶30 That analysis is remarkably similar to this case. Lewis testified and admitted she had taken her prescription medication that morning before driving, which matches her half-heard statement on the video that she had taken her medications. Lewis repeatedly informed the officer she was medically unable to perform the field sobriety tests, which she again stated during her testimony. Lewis spoke in an excited and nervous manner on the video, which the officer claims could be an indication of impairment. At trial, she acknowledged her speech pattern, yet testified she speaks in that manner when she is nervous or without her dentures. The transcript indicates she spoke in a scattered and nervous manner while testifying, and there is no allegation she was under the influence of drugs or medication on the witness stand.

¶31 Beyond the video evidence and Lewis's testimony, the State introduced expert testimony through Michelle Evans that the prescription drug levels in Lewis's blood were above "therapeutic" levels and combining a stimulant with multiple depressants could increase one's drug impairment. Lewis responded with her own expert witness, her treating physician, that the so-called therapeutic levels of drugs are only a reference point for emergency room responses to unknown patients. Lewis's expert, Dr. Bender, testified Lewis's medications had been carefully adjusted due to her body's responses to them over a period of many years. And Dr. Bender testified that in no event could Lewis physically perform the standard field sobriety tests, given her injuries and disability. Lewis called

one more witness who personally knows her and who testified as to her well-known clumsiness and lack of physical coordination.

¶32 I am hard-pressed to find any testimonial evidence in the video that was not cumulative to other evidence presented at trial, or was not argued in support of either the State or Lewis's case. Our statement from *Hart* is prescient when adapted to this case:

> Further, not only was other evidence admitted to establish the same facts, but the [video] supported *both* the State's and [Lewis's] case theories and were used by both sides. [Lewis] stipulated to the admission of [the] patrol-car video[]. Both [Lewis] and the State used the remarks made by [Lewis] during the [traffic stop] to support their respective theories of the case. Defense counsel argued strenuously in his closing that [Lewis's] responses and demeanor on the videos demonstrated [her] innocence.

*Hart*, ¶ 36 (emphasis in original).

¶33 It appears from the jury's questions that it wrestled with determining whether Lewis was impaired by drugs, or impaired by disability, during the traffic stop in this case. The video was likely important for the jury to view Lewis's physical conduct during the traffic stop. *But a video depiction of Lewis's movement is not testimonial evidence.* We have repeatedly held testimonial evidence is oral or communicative evidence. *State v. Stout*, 2010 MT 137, ¶ 30, 356 Mont. 468, 237 P.3d 37 (testimonial defined as communicative evidence); *State v. Green*, 2022 MT 218, ¶ 15, 410 Mont. 415, 519 P.3d 811 (silent security camera video was not testimonial); *State v. Walks*, 2025 MT 147, ¶ 19, 423 Mont. 35, 571 P.3d 648 (child's drawing from a forensic interview was not testimonial even if related to the child's testimony).

¶34 This is not to say Trooper Jester's patrol car video was not testimonial evidence. It certainly was, as it contained his verbal communication with Lewis as he conducted a

13

traffic stop and subsequent DUI investigation. But when examining the potential prejudice from the jury's unsupervised viewing of the video, the only portion of the video that is not duplicated by other admitted evidence or trial testimony is the recorded documentation of how Lewis moved and performed—or failed to perform—the DUI investigative maneuvers. The jury heard all about Lewis's injuries, her speech patterns, and her admission to taking prescription drugs, either from Lewis or other witnesses on the stand, in greater detail than what was on the video. The jury heard from Trooper Jester's testimony at trial his recounting of the reasons for the traffic stop, his demonstration and instructions of the sobriety tests, and his recounting of interactions with Lewis during the investigation. The statements on the video are cumulative and could not have contributed to Lewis's conviction.

¶35 The Court emphasizes the undue emphasis analysis at the expense of the cumulative evidence analysis. "Focusing on whether the video was cumulative misses the point." Opinion, ¶ 18. Doing so moves away from our instruction in *Van Kirk* as to how courts evaluate the effect of the error:

> [I]n order to prove that trial error was harmless, the State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction. To do this, the State must demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence and, qualitatively, by comparison, the tainted evidence would not have contributed to the conviction.

*Van Kirk*, ¶ 47. We then applied this rule to the evidence in that case:

> The fact-finder was presented with other admissible (cumulative) evidence that proved the same fact as the tainted (HGN) evidence, which was Van Kirk's intoxication. . . . [Recounting the other evidence.] On the basis of this other admissible (cumulative) evidence of intoxication, the State met its

14

burden of proving that Van Kirk was under the influence. Moreover, we conclude that the introduction of the inadmissible HGN evidence was harmless because, qualitatively, and in comparison to the admissible evidence presented demonstrating that Van Kirk was under the influence, there is no reasonable possibility that it contributed to the conviction.

*Van Kirk*, ¶ 49.

¶36 Qualitatively, the State and Lewis presented cumulative and more detailed testimonial evidence regarding the key element of the DUI offense: Lewis's use of prescription medication and whether it had the effect of impairing her ability to drive. The jury heard extensive in-person testimony regarding Lewis's speech habits, her general coordination, her physical injuries and consequent limitations, and the effect the prescription medication had on her body. The only non-cumulative evidence presented by the video was the visual depiction of Lewis moving and attempting to perform the field sobriety tests. This non-cumulative evidence was not testimonial, and therefore was not improperly viewed by the jury. As such, the State has met its burden to show the error was harmless.

¶37 I respectfully dissent and would affirm the conviction.

/S/ CORY J. SWANSON

Justice James Jeremiah Shea joins the Dissent of Chief Justice Cory J. Swanson.

/S/ JAMES JEREMIAH SHEA

15